[No. G005902. Fourth Dist., Div. Three. May 11, 1989.]

THE PEOPLE, Plaintiff and Appellant, v.
ROBERTO CORTEZ CONTRERAS, Defendant and Respondent.

**COUNSEL**

Cecil Hicks, District Attorney, Michael R. Capizzi, Chief Assistant District Attorney, Maurice L. Evans, Assistant District Attorney, Thomas M. Goethals, E. Thomas Dunn, Jr., and James Mulgrew, Deputy District Attorneys, for Plaintiff and Appellant.

Phillip I. Bronson, under appointment by the Court of Appeal, for Defendant and Respondent.

## Opinion

CROSBY, J.—A deputy district attorney declined to go forward at a suppression hearing after the superior court refused to require the defendant to prove standing before taking evidence on the reasonableness of a warrantless search and seizure. The court then granted the motion to suppress and dismissed when the prosecution indicated it could not go forward at trial. Although we agree the order of proof is a judicial prerogative, the court should have done no more than determine that the district attorney had failed to justify the warrantless search. The defendant should then have been required to prove standing before the motion was granted. Accordingly, we reverse with directions to take evidence on that issue only.

I

An information alleged that on May 10, 1987, Roberto Cortez Contreras possessed cocaine and marijuana for sale, unlawfully possessed a hypodermic needle, and was under the influence of heroin. According to the points and authorities submitted by the district attorney in opposition to a motion to suppress in the superior court (Pen. Code, § 1538.5), Contreras was seen by Anaheim officers at night in a high narcotics area engaging in what appeared to be an illicit street drug transaction. The officers focused their spotlight on the defendant and saw him holding a clear plastic baggie containing a dark substance; the suspect hastily secreted it near his waist.

The officers hailed Contreras and asked him to come to the patrol car. Apparently uninterested in a consensual encounter, however, he started walking away. (See *Michigan* v. *Chesternut* (1988) 486 U.S. 567 [100 L.Ed.2d 565, 108 S.Ct. 1975]; *Florida* v. *Royer* (1983) 460 U.S. 491 [75 L.Ed.2d 229, 103 S.Ct. 1319]; 3 LaFave, Search and Seizure (2d ed. 1987) § 9.2(h), pp. 410-422.) One of the officers then yelled an order to return; but, apparently even less desirous of being detained (see *Terry* v. *Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868]), Contreras ran. The officer chased him into a nearby apartment, where he observed defendant dropping a baggie in an interior hallway. Contreras said he lived there; but a person claiming to be the actual occupant disputed that and stated he had simply barged inside, interrupting a telephone conversation.

The apparent resident allowed the policemen to search the apartment, and they recovered the suspect baggie. It contained small packets of mari-

juana and cocaine packaged for sale. At the police station a syringe was found in the backseat of the patrol car in which Contreras was transported, and he was determined to be under the influence of an opiate at booking.

The prosecution brief in the superior court argued there was probable cause for a detention, the baggie was abandoned, and the defendant had the burden to prove standing "in the baggie seized from the floor of someone else's apartment . . . ." At the suppression hearing, the court indicated it had read the points and authorities and inquired whether there would be a stipulation that there was no warrant. A certified law clerk appearing with a deputy district attorney for the prosecution replied, "Yes, your honor, we will stipulate there's no warrant."[1] The deputy public defender agreed.

The court invited the law clerk to call her first witness. She declined: "Your honor, before we begin, I believe the defendant has the burden of establishing an expectation of privacy in this challenge to [a] search and seizure, specifically, the clear plastic baggie, before the motion can go forward." The hearing then degenerated into a debate over whether the defendant's obligation to prove standing meant the prosecution could refuse to proceed until that was done. The supervising deputy district attorney succinctly stated his position: "[I]t's clear that the People have a right in every case after *Johnson* [*People* v. *Johnson* (1984) 162 Cal.App.3d 1003 (209 Cal.Rptr. 78)] . . . and . . . other cases that deal with whose burden it is and whose motion this is, we have a right in every case to sit on our hands until they show standing . . . ."

The judge stated she was confused by the *Johnson* decision and did not believe it meant to impose such a cumbersome procedure on trial courts. She told the prosecution to begin, but the deputy district attorney refused. The court then ruled as follows: "Having requested that the People proceed with the presentation of the motion, with the court having advised both parties that it would certainly consider and rule on the issue of standing, depending on whatever evidence was adduced by both sides, and the People having respectfully declined to do so, the court, it being a warrantless search by stipulation, will find that the People have not justified the warrantless search, that the burden as to standing, the court believes, does rest with the defense, but this court is not precluded by that allocation of burden

[1] Although he mentioned only the order of proof issue with respect to standing in the trial court and in his notice of appeal, the district attorney now for the first time urges an additional ground for reversal: The defendant failed to carry his burden, by stipulation or proof, that any search and seizure ever occurred. Not only does the argument come far too late, it is frivolous as well. As noted above, the district attorney conceded there was a search and seizure in his trial court points and authorities and stipulated in open court to the absence of a warrant: No warrant for what, if not a search and seizure?

from ordering or requesting the People to go forward prior to a showing of standing, and the court will grant the motion under 1538.5. And the court believes it has made itself clear that it is inviting appeal on this issue." After the prosecution conceded it could not go to trial once the motion was granted, the court dismissed the action pursuant to Penal Code section 1385.

## II

We understand the trial court's confusion, as well as the district attorney's reliance on *People* v. *Johnson, supra,* 162 Cal.App.3d 1003. At first blush *Johnson* does indeed appear to hold that the prosecution "may sit on [its] hands" unless the defendant first proves standing, i.e., a reasonable expectation of privacy in the place searched. As explained below, however, a close reading of *Johnson* belies the prosecution's interpretation. The case merely stands for the now mundane notion that Proposition 8 (Cal. Const., art. I, § 28, subd. (d)) eliminated this state's vicarious exclusionary rule. ■■■ *Johnson* has nothing to do with the order of proof at suppression hearings, a matter we hold is subject to the sound discretion of the trial court unfettered by substantive search and seizure rules.

*Johnson* is somewhat similar to the present case: In each the prosecution elected to suffer a dismissal rather than go forward at the hearing on a motion to suppress. But our facts are distinctly different in two important respects: In *Johnson* there was no stipulation that the search was warrantless *and* the trial court ruled the defendant was not required to prove standing at all. Here there was such a stipulation, and the trial judge held the defendant *would* be obliged to demonstrate standing at some point before the conclusion of the evidence.

■■■ It is well settled that in the absence of a stipulation the defendant must first show a search or seizure was not accompanied by a warrant before the prosecution can be required to justify its reasonableness. Searches supported by a warrant are presumed reasonable, and the defendant must prove the contrary. The *Johnson* court recognized these rules: "[W]e note that the trial court also erred in granting the motion absent evidence that there was a search and that it was conducted without a warrant." (*People* v. *Johnson, supra,* 162 Cal.App.3d at p. 1010.)

The court did not need to say more than that. But the bulk of the *Johnson* opinion focused on the question of whether the vicarious exclusionary rule survived Proposition 8. The court's holding on the point was as follows: "It is apparent that [California Constitution, article I, section 28, subdivision (d)] is in direct conflict with [this] state's judicially created vicarious exclu-

sionary rule. Given such a conflict, the superior authority of this constitutional provision, and its clear, unambiguous language, we conclude that section 28[, subdivision] (d) abolishes the 'vicarious exclusionary rule' and prohibits courts from excluding relevant evidence." (*Id.,* at p. 1008.) *Johnson* went on to note that evidence need only be suppressed where required by federal law and federal courts have consistently rejected the vicarious standing concept. (*Id.,* at pp. 1009-1010.)

■ The federal precedent *Johnson* cited and discussed does support its conclusion on the vicarious standing issue (*Rawlings* v. *Kentucky* (1980) 448 U.S. 98, 104-105 [65 L.Ed.2d 633, 641-642, 100 S.Ct. 2556]; *United States* v. *Salvucci* (1980) 448 U.S. 83, 95 [65 L.Ed.2d 619, 630-631, 100 S.Ct. 2547]; *United States* v. *Payner* (1980) 447 U.S. 727, 731 [65 L.Ed.2d 468, 473-474, 100 S.Ct. 2439]; *Rakas* v. *Illinois* (1978) 439 U.S. 128, 134-144 [58 L.Ed.2d 387, 394-395, 99 S.Ct. 421]; *Alderman* v. *United States* (1969) 394 U.S. 165, 173-174 [22 L.Ed.2d 176, 186-187, 89 S.Ct. 961]), but not the district attorney's assertion that elimination of vicarious standing also means the defendant must prove standing *before* the prosecution attempts to establish the reasonableness of a search or seizure. At most, these authorities stand for the proposition that *at some point* before the court rules a defendant must prove a right personal to him was infringed by a particular search or seizure.

Moreover, one of the leading standing cases, *Rakas* v. *Illinois, supra,* 439 U.S. 128, can be read to suggest that standing simply cannot be isolated from the other issues in a suppression hearing. *Rakas* teaches that standing is not a separate question and the concept should be "subsumed under substantive Fourth Amendment doctrine." (*Id.,* at p. 139 [58 L.Ed.2d at p. 398].) Thus, according to *Rakas,* it does not "serve[ ] any useful analytical purpose to consider [the personal rights] principle a matter of standing, distinct from the merits of a defendant's Fourth Amendment claim." (*Id.,* at pp. 138-139 [58 L.Ed.2d at p. 398].) While we understand this portion of the opinion to deal more with substance than procedure, it is hardly consistent with the notion that the defense must show standing before the prosecution faces its burden to demonstrate reasonableness.

None of the United States Supreme Court cases we have examined directly addresses suppression hearing procedure. There are several good reasons, we suspect: First, trial court regulation of the order of proof is probably not a problem of sufficient moment to justify Supreme Court attention. Second, such matters, particularly in proceedings not involving juries, are traditionally left to the sound discretion of trial judges. If the Supreme Court ever does consider the question presented here, it will surely accord considerable leeway to trial courts to set the order of proof to expedite litigation.

■ The trial judge acted well within her discretion in requiring the prosecution to proceed first. Based on the factual narration in the prosecution's points and authorities, it is easy to see why this is so. Abandonment was one of the issues raised in the district attorney's points and authorities; but, if the defendant has standing, it is the prosecution's burden to demonstrate abandonment. In other words, standing and reasonableness are two sides of the same coin here; and, as suggested in *Rakas,* that will commonly be true. The most economical way to proceed in such circumstances is the usual method in warrantless search situations: The prosecution begins, and the defense concludes. After the evidence is in, of course, the burden of persuasion is on the prosecution as to the reasonableness of the police conduct and on the defendant with respect to standing.

This is not to say, notwithstanding the passage quoted above from *Rakas,* that in an appropriate case the court could not accelerate the proceedings by asking the defense to demonstrate standing before the prosecution proves reasonableness. Where, for example, only a third party's Fourth Amendment rights appear to have been implicated and presentation of the prosecution evidence would be overly time consuming, it might be more expeditious to initially examine the defendant's interest in, or relationship to, the place searched. The court certainly has the discretion to adopt such a procedure. The order of proof is almost always a matter of trial court discretion in California. (Evid. Code, § 320; Pen. Code, § 1044; Witkin, Cal. Criminal Procedure (1963) Trial, § 432, p. 432; 7 Witkin, Cal. Procedure (3d ed. 1985) Trial, § 153, pp. 154-155.) We find nothing in federal jurisprudence suggesting a state court is bound to proceed in any particular fashion to resolve suppression hearing issues, nor would we expect to. State procedural determinations not involving constitutionally protected rights are rarely of federal concern.

Consequently, we hold the procedural aspect of the standing determination is within the sound discretion of the trial court and not subject to the dictates of the parties. (See *Bryce* v. *Superior Court* (1988) 205 Cal.App.3d 671 [252 Cal.Rptr. 443].) Although this appears to be an issue of first impression in this state, the Colorado Supreme Court has reached a similar conclusion: "As the trial court acknowledged, one who challenges the constitutionality of a search must demonstrate that he had a legitimate expectation of privacy in the area searched or the items seized. [Citations.] However, we have never held that a trial court must proceed in the fashion suggested by the prosecution in resolving the issue of standing. Trial courts must be accorded substantial discretion in the conduct of proceedings. To hold that a trial court must first decide the question of standing before entertaining any other evidence at a suppression hearing would result in bifurcated proceedings in which the evidence would often overlap. No good

purpose would be served by such a rigid procedure and much time would be wasted by presentation of the same evidence twice. We therefore decline to impose the procedural requirement suggested by the prosecution. All that is required is that the trial court resolve the question of standing by applying the appropriate burden of proof." (*People* v. *Tufts* (Colo. 1986) 717 P.2d 485, 489-490.) We have found nothing to the contrary.

Nevertheless, the trial judge went too far. She granted the motion to suppress before Contreras established standing to challenge the search. While we agree the prosecution was properly shorn of the opportunity to attempt to demonstrate the reasonableness of the search and seizure when it refused to go forward, the judge should not have granted the motion itself. The court should have treated the district attorney's inaction as a concession that the search could not be justified and then invited the defense to prove standing.

The judgment is reversed with directions to hold a hearing limited solely to the question of Contreras' standing to challenge the search and seizure. If he prevails on that point, the court shall grant the motion to suppress.

Scoville, P. J., and Wallin, J., concurred.

A petition for a rehearing was denied June 1, 1989, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied September 27, 1989.