Filed 7/14/16  In re C.C. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re C.C., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>C.C.,<br><br>        Defendant and Appellant. | A145797<br><br>(San Mateo County Super. Ct. No. JV83668) |

Appellant C.C., a ward of the juvenile court, admitted to violating a term of his probation barring him from consuming alcohol.  Following that admission, his probationary term was extended on stricter terms than those originally imposed.  He now appeals.  Appellant's appointed counsel on appeal has filed an opening brief asking this court to conduct an independent review of the record as required by *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).  Although appellant has been advised of his right to file a supplemental brief on any points he may wish to address with us directly, he has not availed himself of that right.  Having conducted a full-record review, we find no issues that merit briefing.  We therefore affirm.

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. Wardship and Terms of Probation

Appellant was declared a ward of the juvenile court on May 8, 2014, after the court sustained misdemeanor charges from multiple petitions filed pursuant to Welfare and Institutions Code section 602.[1] On that same date, he was placed on in-home probation. As one of the conditions of probation, appellant was prohibited from using, possessing, or being under the influence of any alcohol.

On June 19, 2015, the San Mateo County District Attorney filed a notice of probation violation pursuant to section 777, subdivision (a). The notice alleged appellant violated the terms of his probation by consuming alcohol on June 13, 2015. Appellant sought to defend against this section 777 charge by moving under Penal Code section 1538.5 to suppress evidence gathered by the police in connection with his detention and arrest on the day he was allegedly found intoxicated. The evidence adduced by the parties at the motion to suppress hearing was, respectively, as follows.

## B. The Prosecution's Case

At 7:00 p.m., on June 13, 2015 Officer Brian Blake, a South San Francisco police officer and a member of the San Mateo County Gang Task Force, was working on a report at the station. At that time, he heard over the radio a call regarding a gun. He did not hear the actual 911 call, but rather the dispatcher's report of the call. As relayed by the dispatcher, the 911 call reported a fight in the 600 block of Railroad in South San Francisco involving several males, one with a gun. The caller identified the combatants as four or five Hispanic males wearing red and white. The men were seen fighting, and then fleeing. This was an area that had recently received a lot of attention due to rival gang activity.

From the station, Officer Blake drove toward the designated area. While he was on the way, other officers reported that "no subjects were seen in the

---

[1] All further statutory citations are to the Welfare and Institutions Code.

immediate area of [the] call," so Officer Blake "was on the lookout of the wider perimeter area." In the 800 block of Commercial, about four blocks away from the 600 block of Railroad, he saw four or five males, wearing red, white, and black and walking northbound on Commercial, which was away from the call area. Officer Blake did not see anyone else in the area.

Officer Blake believed the individuals he saw matched the description the caller had provided, so he turned his patrol car around with the intention of stopping the group. Once he turned around, one of the individuals crossed the street and left the area in a car that had been parked on the street. The others in the group "quickly" went inside a house on that block of Commercial. According to Officer Blake, "it appeared apparent that [he] was going to contact them and that they were evading."

Officer Blake, with the help of a cover officer, Officer Perez, went to the house that the group entered. Their purpose was to investigate the gun-involved fight reported to have occurred a few blocks away. At the front door, Officer Blake told the people inside what he was investigating and for officer-safety reasons ordered everyone outside. Both Officer Blake and Officer Perez had their guns drawn. For about one minute, there was argument between Officer Blake and some of the occupants of the house, and then seven to nine people came out of the house.

Appellant was one of the people who came out of the house in response to Officer Blake's order. He was first contacted by law enforcement outside of the house. Officer Blake could not identify appellant as one of the four or five people he saw walking on the street. Appellant was wearing a white t-shirt and black jeans. Seven or eight officers were at the scene when the individuals were outside of the house. Officer Blake never saw a gun on anyone.

After appellant came out of the house, an officer noted that his eyes were bloodshot and watery, that he had trouble standing steady, and that he smelled of alcohol. The officer asked appellant if he had been drinking, and appellant replied, "I've just been sippin." After his arrest, appellant was transported to the hospital for testing.

### C. The Defense Case

Ruben Regalado lives at 864 Commercial in South San Francisco with his girlfriend, Yvonne Sicairos. Mr. Regalado was in the back laundry room at approximately 7:00 p.m., on June 13, 2015. That day he had friends and family over for a barbecue and appellant was one of his guests for the barbecue.

When Mr. Regalado heard the police, he went to the front door. At this time, appellant was sleeping on the couch. The police officers were pointing their guns at the house. Mr. Regalado and others went outside based upon an officer's order, and sat on the curb as directed. He and appellant were the last people out of the house. After ordering all the occupants out of the house at gunpoint, the officers told him they were investigating a fight with a gun that happened four blocks away. Once outside, Mr. Regalado saw appellant handcuffed.

### D. Disposition of the Section 777 Proceeding, Followed By This Appeal

In support of the motion to suppress, appellant, invoking Fourth Amendment standards, argued that the officers' warrantless entry into the house at 864 Commercial was an illegal search and that the detention of appellant was an illegal seizure. The thrust of his argument was that all the officers knew was that, four blocks away, there had been a fight involving various individuals, who by description could be identified only by their clothing color and ethnicity, and that someone had a gun. Based on this limited information, reported to the officers second-hand by the dispatcher, appellant's counsel contended, "I don't believe that the people have met their burden that there is a reasonable and articulable suspicion that anybody, especially [appellant], is involved in what happened four blocks away, and . . . ten minutes earlier. ¶ . . . I think what is more egregious with respect to entering the home . . . , there needs to be exigent circumstances absent a warrant. We don't have

4

that.  There are not exigent circumstances."[2]

The court disagreed.  At the conclusion of the section hearing on July 9, 2015, it ruled, "The motion is denied.  There were circumstances that warranted asking everyone to get out of the house."  On July 13, 2015, following denial of his motion to suppress,  appellant admitted violating probation by consuming alcohol.  On that same day, he was continued as a ward of the court on probation.  (Ibid.)  He was ordered detained for sixty days, and ordered to serve an additional sixty days of house-arrest or electronic monitoring following his release from the Youth Services Center.

A timely notice of appeal from the court's dispositional order was filed on July 23, 2015.  Appellant's counsel filed a brief under *Wende*, *supra*, 25 Cal.3d 436, and to assist us in our independent review of the record, noted the following issues in the record that might arguably support the appeal (see *Anders v. California* (1967) 386 U.S. 738, 744):  (1) Is the Fourth Amendment exclusionary rule applicable in juvenile violation of probation hearings under section 777?  (2) Did law enforcement have a reasonable suspicion that appellant had been involved in the criminal activity described in the 911 call, as necessary to lawfully detain appellant, by ordering him out of the house at gun point?  (3) Was appellant under de facto arrest when he was ordered out of the house at gun point, ordered to sit on the curb, and handcuffed?  And if yes as to this third issue, was there probable cause to support the arrest?

## II.  DISCUSSION

Having conducted an independent review of the record on appeal under *People v. Wende*, *supra,* 25 Cal.3d 436, and considered whether there are any arguable issues that merit briefing, we find none.

In the course of our review, we have taken into account the specific issues

---

[2] Appellant made no objection to the prosecution's reliance on anonymously reported information relayed from the dispatcher under the *Harvey-Madden* rule.  (See *People v. Romeo* (2015) 240 Cal.App.4th 931, 942).

appellant's appointed counsel identified as potentially arguable.  In accordance with *People v. Kelly* (2006) 40 Cal. 4th 106, 110, we note that  (1) "although section 1538.5 continues to provide the exclusive procedure by which a defendant may seek suppression of evidence obtained in a search or seizure that violates 'state constitutional standards,' a court may exclude the evidence on that basis only if exclusion is also mandated by the federal exclusionary rule applicable to evidence seized in violation of the Fourth Amendment" (*People v. Lazlo* (2012) 206 Cal.App.4th 1063, 1072 (*Lazlo*)), and (2) even assuming inculpatory evidence was obtained in this case in violation of the Fourth Amendment, under "federal constitutional principles, . . . the evidence obtained [was] nonetheless admissible to establish a probation violation."  (*Id.* at p. 1069; see *In re D.J.* (2010) 185 Cal.App.4th 278, 284 [section 777 proceedings are "the juvenile court equivalent of probation revocation proceedings in adult criminal cases"]; *People v. Harrison* (1988) 199 Cal.App.3d 803, 811 ["federal law does not require application of the exclusionary rule to probation revocation hearings"]; *People v. Nixon* (1982) 131 Cal.App.3d 687, 691, 693–694 [same].)  Accordingly, absent "police conduct [that] . . . shocks the conscience" (*Lazlo*, supra 206 Cal.App.4th at 1070), the evidence gathered in connection with appellant's detention and arrest on June 13, 2015 was admissible to prove a probation violation, notwithstanding any of the Fourth Amendment issues raised in appellant's motion to suppress.  None of the police conduct at issue in this case transgresses the "shocks the conscience" standard.

### III.  DISPOSITION

The juvenile court's dispositional order of July 13, 2015 is affirmed.

_____

Streeter, J.

We concur:

_____

Reardon, Acting P.J.

_____

Rivera, J.

A145797/*In re C.C.*

7